580 F.2d 121
 Dan CONSTANTINO, trading as Constantino's Company, Appellant,
v.
AMERICAN S/T ACHILLES, her boats, engines, tackle, apparel,
etc., and Newport Tankers Corporation, as owners
and/or operators of the AMERICAN S/T
ACHILLES, Appellees.
Dan CONSTANTINO, trading as Constantino's Company, Appellee,
v.
AMERICAN S/T ACHILLES, her boats, engines, tackle, apparel,
etc., and Newport Tankers Corporation as owners
and/or operators of the AMERICAN S/T
ACHILLES, Appellants.
 Nos. 77-1211, 77-1212.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 10, 1978.
Decided July 20, 1978.
 
 Melvin J. Radin, Norfolk, Va., for appellant in No. 77-1211 and for appellee in No. 77-1212.
 Burt M. Morewitz, Newport News, Va. (George J. Viertel, Norfolk, Va., on brief), for appellees in No. 77-1211 and for appellants in No. 77-1212.
 Before WINTER, WIDENER and HALL, Circuit Judges.
 WIDENER, Circuit Judge.
 
 
 1
 On March 8, 1976, defendant Newport Tankers Corporation contracted with plaintiff Dan Constantino, trading as Constantino's Company, for the cleaning of grain storage tanks in Newport's ship, the American S/T Achilles. The contract terms fixed the price at $30,000 and required completed performance by March 17, 1976. Constantino was unable to complete the cleaning by March 17, but with the defendant's permission continued work until March 25, 1976, when Newport terminated Constantino's services. Constantino subsequently brought this suit against the Achilles and Newport, demanding $69,863.50 as damages for the alleged breach of contract.
 
 
 2
 At trial the district court found that the parties had agreed to extend the time for Constantino's performance, and that Newport breached the contract as extended when it ordered Constantino to leave the vessel on March 25. Although there was evidence that Constantino's work was of poor quality, the court found that Newport permitted the extension because of the comparatively low cost of the cleaning contract. The court further found that the reason for Newport's breach was union objection to Constantino's non-union operation.
 
 
 3
 In determining the damages due Constantino for the breach of contract, the district court decided that basing recovery upon a theory of Quantum meruit was "as close and as accurate as we are going to be able to get . . .." Because Constantino had cleaned twenty-four of the thirty-three tanks on the Achilles prior to the breach, the court calculated damages as twenty-four thirty-thirds (24/33) of the contract price of $30,000, less sums already paid to the plaintiff by Newport, and entered judgment for plaintiff in the amount of $7,818.16. Both parties appeal.
 
 
 4
 Newport assigns as error only the finding of the district court that the parties agreed to permit Constantino an extension of time in which to complete his performance. The district court, however, acting as the trier of fact made this finding after full presentation of evidence by the parties, and we uphold the finding as not clearly erroneous. FRCP 52(a).
 
 
 5
 Constantino on his cross-appeal asserts that, as a matter of law, the district court erred in its Quantum meruit determination of the amount of damages by calculating damages with reference to the original contract price. Again, however, we are of opinion the district court committed no reversible error. The authorities are divided on the issue of whether the contract price sets a limit upon a recovery in Quantum meruit. See, e. g., Williston on Contracts § 1485 (Jaeger ed. 1970); D. Dobbs, Law of Remedies § 12.24 (1973). Williston opines, § 1485 at 312, that cases limiting recovery to the contract price as a matter of law "are opposed to sound principle," but in the same section at p. 309-10 gives a concurrent opinion, quoting Wellston Coal Co., n. 2, infra, the plaintiff should not recover when " 'he would have necessarily lost more by performing the contract for the consideration agreed upon, than he did by being prevented from doing so.' " Dobbs, § 12.24 at 916, states that "(t)he choice between the rule limiting the contractor to the contract rate and the rule allowing him the full 'value' of his work without limit is a difficult one."
 
 
 6
 The district court did not state which theory of Quantum meruit it adopted in determining Constantino's recovery. Because in our view the amount of the award was permissible under either theory, we need not decide whether in suits in admiralty the contract price sets a limit on the plaintiff's right to recover, see Williston, § 1485; Dobbs, p. 915, et seq.[1] Since the contract price unquestionably is probative in ascertaining damages in Quantum meruit, United States v. Algernon Blair, Inc., 479 F.2d 638, 641 (4th Cir. 1973); Williston § 1485 at 306, we cannot say the district court abused its discretion in relying upon admittedly admissible evidence as the measure of Constantino's recovery. Given the deference an appellate court owes the trier of fact, and the equitable considerations that necessarily enter into a determination of damages based on Quantum meruit,[2] we affirm the award.
 
 
 7
 Constantino also argues on his cross-appeal that the district court erred by not awarding him the costs ordinarily due the prevailing party. FRCP 54(d). While the trial court exercises considerable discretion in the taxing of costs under Rule 54(d), no reason is called to our attention for the district court's departure from the normal practice, and the district court gave none. Accordingly, we vacate the district court's order denying costs to Constantino, and remand for entry of judgment in Constantino's favor for that item.
 
 
 8
 AFFIRMED IN PART, VACATED IN PART, and REMANDED.
 
 
 9
 WINTER, Circuit Judge, concurring and dissenting:
 
 
 10
 While I concur in affirming the district court's determination of liability and reversing its failure to award costs, I respectfully dissent from the majority's affirmance of the district court's award of damages. The majority finds that the court's award solely on the basis of the contract price was an appropriate exercise of equitable discretion. I disagree; I would vacate the part of the judgment fixing damages and remand this issue to the district court for a redetermination of damages.
 
 I.
 
 11
 The district court found that as a result of defendant's wrongful termination of the contract, plaintiff was entitled to recover damages. The court further concluded that plaintiff's recovery should be based on Quantum meruit. Damages were fixed solely by determining the fractional completion of the total work and applying that fraction to the contract price, deducting therefrom payments previously made. No consideration was given to other indicia of value. The sum thus computed was $7,818.16. I think that sole reliance on this kind of computation was error.
 
 
 12
 A plaintiff who is the victim of wrongful termination after rendering part performance has the generally-recognized option of suing either on the contract (to obtain the benefit of his bargain) or for restitution (to obtain the reasonable value of his part performance). Restatement, Contracts, § 347 (1932). When a plaintiff sues to recover the reasonable value of services rendered in reliance on a contract wrongfully breached by defendant, "the generally prevailing rule is that the plaintiff's recovery . . . is neither measured by nor limited by the contract price or rate." 5 Corbin on Contracts § 1113 at 497 (1951). Accord, 12 Williston on Contracts § 1485 (Jaeger ed. 1970). It is true, as the majority opinion notes, that the contract price constitutes admissible evidence of the reasonable value of plaintiff's services; but such evidence is in no way conclusive. The parties must be permitted to introduce, and the court must consider, other probative evidence of market value. Because the record in the instant case establishes that the reasonable value of the services performed by plaintiff was substantially in excess of the contract price[1] and because the court's oral opinion gives no indication that the court considered any evidence other than the contract price in computing plaintiff's recovery, I do not think that the award may properly stand.
 
 II.
 
 13
 The majority opinion places too great reliance on the discretion of the trial court in fixing the award of damages. Quite clearly a trial court is vested with discretionary powers in fixing an award. This discretion, however, goes to the evaluation of evidence relevant to a just award. It is not an appropriate exercise of discretion to utilize an improper legal standard in computing damages or to exclude from consideration evidence relevant to a just award.
 
 
 14
 By relying exclusively on the district court's equitable discretion in fixing plaintiff's recovery, the majority opinion avoids a threshold legal question posed by this case "whether in suits in admiralty the contract price sets a limit on the plaintiff's right to recover" in Quantum meruit. Slip opinion at 5. As indicated above, the generally prevailing rule at common law is that in Quantum meruit the contract price neither determines nor limits plaintiff's recovery. I perceive no reason why this should not be the rule in admiralty.
 
 III.
 
 15
 Until today's decision, I had thought that the common law rule with respect to damages on the theory of Quantum meruit was established in this circuit by our decision in United States v. Algernon Blair, Inc., 479 F.2d 638 (4 Cir. 1973). That case arose when the general contractor responsible for the construction of a United States Naval Hospital breached its contract with one of its subcontractors. Because of the breach, the subcontractor ceased work and sued the contractor under the Miller Act for the reasonable value of labor and equipment already furnished pursuant to the subcontract. The district court found that defendant had breached the contract but declined to award damages. In making its computation, the district court ignored the value of labor and equipment furnished, instead basing its calculations on the contract price. We reversed, holding that plaintiff was "entitled to recover in quantum meruit." 479 F.2d at 640. Judge Craven, writing for a unanimous panel, described this theory of recovery as follows:
 
 
 16
 The impact of quantum meruit is to allow a promisee to recover the value of services he gave to the defendant Irrespective of whether he would have lost money on the contract and been unable to recover in a suit on the contract. Scaduto v. Orlando, 381 F.2d 587, 595 (2d Cir. 1967). The measure of recovery for quantum meruit is the reasonable value of the performance, Restatement of Contracts § 347 (1932); and Recovery is undiminished by any loss which would have been incurred by complete performance. 12 Williston on Contracts § 1485, at 312 (3d ed. 1970). While the contract price may be evidence of reasonable value of the services, it does not measure the value of the performance or limit recovery.
 
 
 17
 479 F.2d at 641 (emphasis added).
 
 
 18
 Aside from the authority of this panel to overrule or decline to follow the decision of a previous panel, considerations of fairness and equity underlie the rule we previously adopted.[2] It was patently correct. "The defendant cannot refuse to abide by the contract and at the same time claim its protection when the other party is not in default." 12 Williston on Contracts § 1485 at 312 (3d ed. 1970). In the instant case, plaintiff, while he admittedly would have lost money under the contract if performed, was not the breaching party. He was willing to continue performing at the contract price. If defendants had allowed plaintiff to complete performance, they would have had an indisputable right to the benefit of their bargain. This right was lost, however, when defendants wrongfully terminated plaintiff's services. The inequity in measuring plaintiff's recovery by the contract price without considering other evidence of reasonable value is that defendants, despite their default, are permitted to reap the benefit of their bargain with plaintiff. As Williston observes, such result is tantamount to unjust enrichment and, therefore, (as the majority itself notes) is "opposed to sound principle." Williston, supra, at 312.[3]
 
 IV.
 
 19
 To summarize, had this suit been brought under the Miller Act rather than in admiralty, Algernon Blair would have required us to reverse the district court's determination of damages. The majority opinion advances no persuasive reason for a different result here,[4] and I know of none. Therefore, I would adopt in the instant case the measure of damages announced in Algernon Blair,[5] vacating the damage award and remanding this case to the district court for further proceedings.
 
 
 
 [1]
 In United States v. Algernon Blair, Inc., 479 F.2d 638, 641 (4th Cir. 1973), this court stated that, in a suit under the Miller Act, the contract price does not limit the plaintiff's recovery. In Blair, however, unlike our case, the district court had denied recovery to the plaintiff because the plaintiff would have lost more by performing. See Williston, p. 309-10, supra. In the case before us, the district court did not deny recovery; all it did was to fix the damage
 
 
 [2]
 Although the remedy of Quantum meruit was established by the common law, equitable considerations inextricably enter into the fact finder's determination of damages. See Williston on Contracts, § 1485 at 307, quoting Wellston Coal Co. v. Franklin Paper Co., 57 Ohio St. 182, 48 N.E. 888, 889 (1897)
 
 
 [1]
 Plaintiff testified that, notwithstanding the contract price, the reasonable value of the services rendered to the date of default was over $58,000. Defendants admitted in their answer that it cost over $54,000 to complete the cleaning of the remaining nine tanks. Moreover, the district court itself recognized that the contract price was well below the real value of the services rendered. "(T)he Court finds that the defendants . . . were working along with Mr. Constantino for the obvious reason that they had made a good bargain and that they expected to get all this work done for $30,000, When it very probably ordinarily would have cost them a good deal more than that. . . ." (Emphasis added.)
 
 
 [2]
 Our holding in Algernon Blair is entirely consistent with decisions in other circuits. See, e. g., United States v. Western Casualty and Surety Co., 498 F.2d 335, 338 (9 Cir. 1974); Acme Process Equipment Co. v. United States, 347 F.2d 509, 530, 171 Ct.Cl. 324 (1965); St. Paul-Mercury Indemnity Co. v. United States, 238 F.2d 917, 924 (10 Cir. 1956); United States v. Zara Contracting Co., 146 F.2d 606, 610-11 (2 Cir. 1944)
 
 
 [3]
 The majority opinion cites Wellston Coal Co. v. Franklin Paper Co., 57 Ohio St. 182, 48 N.E. 888 (Ohio 1897) for the proposition that the contract price should not limit a plaintiff's recovery in Quantum meruit except where, as here, the plaintiff "would necessarily have lost more by performing the contract, for the consideration agreed upon, than he did by being prevented from doing so." Quoted in Williston, supra, at 309-10. As I interpret this, the Ohio court would limit plaintiff's Quantum meruit recovery by the contract whenever plaintiff holds a losing contract. To this I cannot subscribe. First, the exception carved out by the Ohio court swallows the rule; for the only time a plaintiff holding an enforceable contract right would sue on Quantum meruit would be when he holds a losing contract. Otherwise, reason would dictate that he sue on the contract. Second, and more importantly, the Wellston Coal formulation misplaces the focus of inquiry. As both Corbin and Williston state, the proper inquiry is not whether plaintiff is being released from a bad bargain but whether it is just to allow a defaulting defendant to obtain the benefit of a contract he wrongfully breached. Williston, supra, at 312-13; Corbin, supra, at 501-02; see also, Fuller & Perdue, The Reliance Interest in Contract Damages, 56 Yale L.J. 52, 77 (1936). Thus, I find misguided the majority's reliance on Wellston Coal
 
 
 [4]
 The majority opinion unconvincingly attempts to distinguish the instant case from Algernon Blair by noting that in the latter the district court completely denied recovery, while here the court simply limited the recovery to a fraction of the contract price. Slip opinion at 5 n. 1. Yet, as the majority opinion elsewhere concedes, the issue both here and in Algernon Blair is whether recovery should be determined by the contract price or whether it should reflect the reasonable market value of services rendered. Whether computing damages on the basis of the contract price results in a limited recovery (instant case) or no recovery at all (Algernon Blair ) is irrelevant
 
 
 [5]
 "(T)he standard for measuring the reasonable value of the services rendered is the amount for which such services could have been purchased from one in the plaintiff's position at the time and place the services were rendered." 479 F.2d at 641