CAROLYN T. COBLE v. RICHARDSON CORPORATION OF GREENSBORO

No. 8418DC234

(Filed 4 December 1984)

1. Sales § 6.4— warranties on sale of house—binding despite label

In an action for breach of warranty and unfair and deceptive trade prac-
tices arising from drainage problems around a newly built house, defendant
was bound by a section of the contract labeled "Non-Warrantable Items"
because that section clearly created obligations on defendant's part.

2. Sales § 6.4— warranties on sale of house—effect of "walk through" inspection
form

Although plaintiff did not mention a water drainage problem in her newly
purchased house on a "walk-through" before closing, defendant is bound by its
construction warranty because the warranty does not indicate that a defect
must be noted on the form for a buyer to preserve rights or that the form is
the exclusive means of notifying defendant of problems arising under the war-
ranty.

3. Evidence § 32.2— parol evidence—warranty on house—no inconsistency with
contract

Oral representations regarding a water drainage problem made by defend-
ant developer's agents prior to and at closing were properly admitted, despite
a merger clause in the contract of sale and the parol evidence rule, because
the statements did not "vary, add to, or contradict" the construction warranty
contained in the contract.

4. Contracts § 29.2— damages—correction of drainage problem in newly built
house

In an action arising from a drainage problem in a newly constructed
house, there was ample competent evidence to support the trial court's finding
that $1,474.40 was the reasonable cost of correcting the problem where plain-
tiff testified that she had hired an independent contractor to correct the
drainage problem and to do other work, and that $1,474.40 was the portion of
his total bill representing the amount she paid him to correct the problem, and
where the contractor testified that the cost of repairing the problem was be-
tween $1,500 and $1,800 and that this was a reasonable and necessary amount.
Findings of fact made by the trial court which resolved conflicts in the
evidence are binding on appeal, even though the evidence also supported a dif-
ferent conclusion.

5. Accord and Satisfaction § 1— finding that no accord and satisfaction existed—
no error

In an action arising from a drainage problem in a newly constructed
house, the trial court did not err in finding that plaintiff had not entered into
an accord and satisfaction where plaintiff testified that the amount tendered
by defendant would not compensate her for correcting the problem, a check
sent to plaintiff by defendant which contained the words "void after 60 days"

was not cashed within the 60 days, and plaintiff's counsel sent defendant a letter explicitly rejecting any offer to settle.

**6. Unfair Competition § 1— sale of house—breach of warranty—no unfair trade practice**

In an action arising from a drainage problem in a newly constructed house, the trial court erred by finding that defendant's failure to correct the problem constituted an unfair trade practice. Breach of express and implied warranties alone does not constitute a violation of Chapter 75, and there was nothing so oppressive or overreaching about defendant's behavior that it would transform the case into one for an unfair trade practice.

APPEAL by defendant from *John, Judge.* Judgment entered 21 September 1983 in District Court, GUILFORD County. Heard in the Court of Appeals 14 November 1984.

Plaintiff filed this action for damages resulting from breach of warranty and unfair and deceptive trade practices in connection with the sale of a single family residence.

The case was tried by the court without a jury. The plaintiff testified as follows: Sometime before March 1978, plaintiff and her fiance were shown the home in question, which had been built on a lot owned by defendant, a real estate development company. At that time she noticed washed-out spaces in the yard, gullies, and very little grass. She expressed concern about the yard and she was told that there was a water problem but that it would be resolved upon purchase. At the closing, plaintiff was assured by the head of defendant's residential department that the water problem would be taken care of. Plaintiff moved into the house in March 1978. The yard was in bad shape, and water was accumulating under the house. Because her fiance had died, plaintiff did not contact defendant about correcting the drainage problem until autumn. The result of her telephone conversations was that defendant sent workers to reseed plaintiff's lawn on three separate occasions, the last of which was in November 1978. Plaintiff continued to communicate with defendant, but the problem remained unsolved. In May 1979 she contacted Calvin Bryant, an independent landscaping contractor. Bryant performed work to correct the drainage problem, and did other landscaping work as well.

Calvin Bryant testified for the plaintiff that to solve the drainage problem, he installed french drains, a terrace, lowered

Coble v. Richardson Corp.

the soil in the back of the house, built a retaining wall with cross-ties, and placed some photinia plants in the yard to prevent erosion. Plaintiff testified that after Bryant completed his work, she requested $1,474.40 from defendant, and received a check from them for $400. She states she never cashed the check, but gave it to her attorney. Plaintiff testified that she had virtually no water drainage problems after Bryant's work, except for a water pipe which broke in the winter of 1981. Bryant testified that he visited the house several times after he worked on it, and that there was no dampness under the house.

Defendant presented the following evidence: Bill Osborne, a landscaping contractor, testified that he corrected a similar water problem at the house next door to plaintiff's for $300. He also described another method to correct such problems which would cost about $400.

Margaret Dudley testified that she purchased plaintiff's house in April 1981. She stated that due to a problem with water collecting in the crawl space underneath the house plaintiff left $300 in escrow from the closing proceeds to cover the cost of rectifying the problem. She further testified that when it rains, water accumulates next to the foundation.

Two of Richardson's employees also testified for the defendant: Wayman Merrill, currently manager of defendant's construction department, and Anna Maser, a real estate broker for defendant who sold plaintiff the house. Merrill testified as follows: He accompanied plaintiff on a walk-through of the house before plaintiff purchased it. No water problem was discussed. He spoke with plaintiff in February or March of 1979 and told her that although matters related to landscaping were not covered by the warranty, he would take a look at her property after the yard dried out from winter rains. He next spoke with plaintiff in May 1979, when she told him she had contracted with Calvin Bryant. He subsequently examined the yard, concluded that $400 constituted a fair amount to solve the drainage problem, and upon plaintiff's agreement to accept $400 as a settlement, he had a check in that amount mailed to her. He had no further communication with plaintiff until he received a demand letter from her attorney in November 1979.

Anna Maser testified that she originally showed plaintiff and her fiance the house, that they requested the yard be reseeded, but never mentioned the water drainage problem. She testified that no water problems were discussed at the closing, and that after the closing she wrote a memorandum to defendant's landscaping department after speaking with plaintiff. One of the items on the memorandum was that plaintiff was concerned over defendant's failure to reseed the lawn.

Judge John awarded plaintiff $1,474.40 in compensatory damages, and based on his conclusion that defendant's actions constituted an unfair trade practice, trebled the damages. Defendant appeals.

*Douglas, Ravenel, Hardy, Crihfield & Lung, by G. S. Crihfield and James W. Lung, for plaintiff-appellee.*

*Adams, Kleemeier, Hagan, Hannah & Fouts, by M. Jay DeVaney and Thomas W. Brawner, for defendant-appellant.*

VAUGHN, Chief Judge.

I

Defendant first argues that the trial court committed reversible error in concluding that defendant breached a duty to correct a drainage problem with plaintiff's house, which duty arose out of certain written and oral representations made by defendant. We overrule the assignments of error on which this argument is based.

A

[1] As to the written representations, the record contains a document entitled "Construction Warranty." This document is part of the entire, integrated contract; indeed, the defendant does not dispute that it was bound by the warranty, but rather that the trial court erred in interpreting the scope of coverage. The section titled "Non-Warrantable Items" includes the following provisions:

Waterproof Foundation—Reasonable precautions have been taken to prevent water from entering the basement or crawl space. Always remember that the best assurance for a

dry basement or crawl space is to see that surface water drains away from the foundation. Water that settles around the foundation will most likely leak underneath. The homeowner should be sure to fill any settling that often occurs around a new foundation. Keep perimeter drain pipe open at outfall end of pipe. This is part of the owner's maintenance.

Grading—Your lot and surrounding lot grades were established to provide drainage away from the building. Should you wish to change the drainage pattern for some reason, be sure that a proper drainage slope is retained. Do not fill above the top of the foundation. Water may enter the typical joint between the foundation and brick or siding. Your builder assumes no responsibility for the grading if established patterns are altered or for water problems caused by improper drainage contrary to his recommendation.

The defendant contends that although the quoted provisions are found on its warranty form, because they appear in the section denominated "Non-Warrantable Items," no obligations on defendant's part are created. We disagree. Despite the title of the section, and despite the fact the section distinguishes particular situations in which defendant will not be liable to the buyer under the warranty, its provisions clearly create obligations on defendant's part. Listed under "Non-Warrantable Items" are the following statements: "We warrant that shrubs will be alive and in healthy condition at the time the owner moves into the house"; "Builder is responsible [for broken glass and torn screens] only if notified before or at time of 'walk through' inspection . . ."; "[W]e will resow and remulch any washed out spots [of the lawn] . . . once . . . within 12 months of the closing. . . ." It is self-evident that those statements are express warranties creating affirmative obligations. Likewise do the statements relied upon by plaintiff, i.e., "Reasonable precautions have been taken to prevent water from entering the basement or crawl space," and "Your lot and surrounding lot grades were established to provide drainage away from the building," create obligations on defendant's part.

[2] The defendant further argues that because the construction warranty contains a procedure for a "walk-through" of the house

Coble v. Richardson Corp.

before closing, with defects to be noted on a request for service form, the failure of plaintiff to mention the water drainage problem on this form precluded it from subsequently raising this claim under the one-year warranty. Again, the plain language of the warranty belies defendant's argument. Nowhere in the warranty is it indicated that a defect must be noted on the request for service form during the walk-through in order for a buyer to preserve any rights, or even that the three request for service forms provided by defendant are the exclusive means of notifying the defendant of problems arising under the warranty.

The foregoing discussion disposes of defendant's suggestion that if it had any duty with respect to plaintiff's water problem, it was merely to reseed. Plaintiff timely notified defendant of a specific defect involving drainage covered by the warranty. Defendant was obligated to correct the problem. Clearly, defendant's duty was not limited to reseeding plaintiff's lawn if that failed to solve the problem.

B

[3] The trial court also based its conclusion that defendant breached its duty to plaintiff to correct the water problem on oral representations made by defendant's agents prior to and at the closing. Defendant argues that the oral representations were improperly admitted into evidence, relying on the parol evidence rule and on a merger clause in the contract of sale.

Defendant has waived its right to assert the parol evidence rule, as the record reveals that defendant failed to object to the testimony at trial. *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 197, 225 S.E. 2d 557, 564-5 (1976) (admitting evidence of statements made prior to signing of purchase contract). Even if the testimony had been properly objected to, however, neither the parol evidence rule nor the merger clause operates to exclude the oral representations.

The parol evidence rule provides that when a contract is reduced to writing, parol evidence cannot be admitted to vary, add to, or contradict the same. *Hoots v. Calaway*, 282 N.C. 477, 486, 193 S.E. 2d 709, 715 (1973). The contract of sale between the parties contained the following provision, commonly referred to as a merger clause.

Buyer hereby acknowledges that he has inspected the above described property, that no representations or inducements have been made other than those expressed herein, and that this contract contains the entire agreement between all parties herein.

This is not a case where a party relies on a merger clause in one document to exclude another from admission into evidence. *See Loving Co. v. Latham*, 20 N.C. App. 318, 201 S.E. 2d 516 (1974). Instead, what defendant asserts is that the oral representations plaintiff claims were made to her concerning the water problem are inconsistent with the written agreement and hence inadmissible. As discussed *supra*, however, the construction warranty did obligate the defendant to correct the water drainage problem. Therefore, the oral representations of defendant's agents did not "vary, add to, or contradict" the construction warranty, and the parol evidence rule does not exclude them. Likewise, the merger clause excludes representations or inducements "other than those" contained in the contract. The construction warranty was part of the integrated agreement, and as the representations of defendant's agents were consistent with its provisions, they were not barred by the merger clause.

II

[4] Defendant next argues that the trial court erred in finding that $1,474.40 was the reasonable cost of correcting the water damage problem. Plaintiff testified that she hired Calvin Bryant to correct the drainage problem and to do other work, and that $1,474.40 was the portion of Bryant's total bill representing the amount she paid him to correct the water problem. Calvin Bryant testified that the cost of repairing the water problem was between $1,500 and $1,800, that this represented the reasonable cost of repair work, and that he would not have made the charges if they had not been necessary. Defendant offered evidence that a similar problem at plaintiff's neighbor was corrected for $300, and that an alternative method of repair cost $400. Based on this evidence, defendant contends that the award of damages was clearly excessive. We disagree.

In a suit for damages arising out of breach of contract, the injured party is to be placed in as near the position he or she would have occupied absent the breach. *Meares v. Construction Co.*, 7

N.C. App. 614, 173 S.E. 2d 593 (1970). That is, the injured party is to be compensated "for the loss which fulfillment of the contract could have prevented or the breach of it has entailed." *Norwood v. Carter,* 242 N.C. 152, 155, 87 S.E. 2d 2, 4 (1955). *See also, Moss v. Knitting Mills,* 190 N.C. 644, 130 S.E. 635 (1925) (where contract substantially complied with, damages are to be "reasonable cost" of labor to remedy defects).

Ample competent evidence supported the finding that $1,474.40 was the reasonable cost of correcting the drainage problem. We may not disturb this finding even though the evidence also supported a different conclusion, as findings of fact made by the trial court which resolve conflicts in the evidence are binding on appellate courts. *Trotter v. Hewitt,* 19 N.C. App. 253, 198 S.E. 2d 465, *cert. denied,* 284 N.C. 124, 199 S.E. 2d 663 (1973). *Accord, Kane Realty Corp. v. Harllee-Quattlebaum Const. Co.,* 424 F. 2d 253 (4th Cir. 1970) (rejecting plaintiff's argument that damages were inadequate where findings supported by "substantial evidence" and not "clearly erroneous").

### III

**[5]** Defendant next argues that it was reversible error to find that the $400 check tendered to plaintiff by defendant was never accepted by her. Defendant contends that plaintiff's retention of the check from 11 June 1979 until she filed suit constituted an accord and satisfaction or compromise and settlement of any claims she may have had against defendant with respect to the water drainage problem. Again, we find defendant's argument to be without merit.

An "accord" is an agreement whereby one party undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, something other than or different from what the party is or considers him or herself entitled to, and the "satisfaction" is the execution or performance of such agreement. *Allgood v. Trust Co.,* 242 N.C. 506, 515, 88 S.E. 2d 825, 830-1 (1955). Defendant offered evidence that plaintiff agreed $400 would compensate her for Mr. Bryant's work while plaintiff testified to exactly the opposite. Again, since the trial court's finding of no acceptance and hence no accord and satisfaction is supported by competent evidence, it is conclusive on appeal.

The defendant argues that because the plaintiff retained the check, albeit without cashing it, for an unreasonable period of time, a finding of accord and satisfaction was required as a matter of law. *FCX, Inc. v. Oil Co.*, 46 N.C. App. 755, 266 S.E. 2d 388 (1980), is distinguishable. *FCX* involved a cashier's check, which is similar to cash and unlike defendant's draft, is not subject to countermand. Furthermore, the creditor in *FCX* retained possession of the check even after the debtor demanded its return.

We are aware that some jurisdictions have adopted a rule that retention of a check without cashing it for an unreasonable period of time constitutes an accord and satisfaction. *See generally*, 1 Am. Jur. 2d, *Accord and Satisfaction* § 23 (1962). In the case before us, however, even if Judge John had found an agreement between the parties, and we had occasion to consider adopting this rule, the facts do not support a constructive execution or "satisfaction" of the agreement under this rule. The words "void after 60 days" are printed on the check. The check was not cashed within the sixty days and in November 1979, defendant received a letter from plaintiff's counsel explicitly rejecting any offer to settle for $400.

IV

[6] Defendant's final contention is that the trial court erred in finding that Richardson's failure to correct Coble's water drainage problem constituted an unfair trade practice. On this issue, we agree with the defendant, and find that damages were improperly trebled.

The trial court found:

[t]hat the Defendant's acts constituted unfair acts or practices in the conduct of commerce; that the Plaintiff, as a new home vendee stood in an inequitable situation in regard to the Defendant, who was a developer and vendor of new homes, and was therefore oppressed and substantially injured by the activities of the Defendant.

Based on this finding, the trial court concluded that defendant had violated G.S. 75-1.1, North Carolina's Unfair Trade Practice Act, and trebled the $1,474.40 in compensatory damages pursuant to G.S. 75-16.

The trial court based its conclusion of law on a finding that defendant's behavior was unfair, and not that it was fraudulent or

Coble v. Richardson Corp.

deceptive. Although unfair conduct that is neither deceptive nor fraudulent may constitute an unfair trade practice, the evidence at bar did not rise to the level of unfairness as that concept has been defined by our courts. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Johnson v. Insurance Co.*, 300 N.C. 247, 263, 266 S.E. 2d 610, 621 (1980). "[A] party is guilty of an unfair act or practice when it engages in conduct that amounts to an inequitable assertion of its power or position." *Libby Hill Seafood Restaurants, Inc. v. Owens*, 62 N.C. App. 695, 700, 303 S.E. 2d 565, 569, *cert. denied*, 309 N.C. 321, 307 S.E. 2d 164 (1983).

The case before us involves a breach of contract based on written warranties and oral representations that were essentially restatements of what defendant was already bound to do under the warranty. There is nothing so oppressive or overreaching about defendant's behavior in breaching the contract that would transform the case into one for an unfair trade practice.

Furthermore, cases in this area have laid down a rule that breach of express and implied warranties alone do not constitute a violation of Chapter 75. *See Trust Co. v. Smith*, 44 N.C. App. 685, 262 S.E. 2d 646, *review denied*, 300 N.C. 379, 267 S.E. 2d 685 (1980); *Stone v. Homes, Inc.*, 37 N.C. App. 97, 245 S.E. 2d 801 (1978). The evidence in this case was that defendant breached express warranties it made to the plaintiff. Defendant is thus liable to plaintiff in compensatory damages, but there being no basis in law for a finding of an unfair trade practice, the trial court erred in trebling the damages.

Modified and affirmed.

Judges BRASWELL and EAGLES concur.