DEVELOPMENT ENTERPRISES OF RALEIGH, A NORTH CAROLINA GENERAL PARTNERSHIP, PLAINTIFF v. BETTY FAYE HOWARD BLAND ORTIZ; ESTATE OF DONALD E. BLAND; NORTH CAROLINA NATIONAL BANK AS ADMINISTRATOR, C.T.A. OF THE ESTATE OF DONALD E. BLAND; JEFFREY EDWIN BLAND, DONNA HELENE BLAND; SUMER NICOLE BLAND; MEGAN ELIZABETH BLAND; ELIZABETH A. McCUISTON WARREN; ELIZABETH A. McCUISTON WARREN, ADMINISTRATRIX OF THE ESTATE OF WILLIAM T. McCUISTON; ESTATE OF WILLIAM T. McCUISTON; STEPHANIE ANNE McCUISTON; WILLIAM T. McCUISTON, JR. AND WILLIAM TYLER McCUISTON, DEFENDANTS AND THIRD-PARTY PLAINTIFF v. JAMES L. McMILLAN, JR., CURTIS WESTBROOK, RONNIE W. SNOTHERLY AND JERRY A. COOK, THIRD-PARTY DEFENDANTS

No. 8610SC1218

(Filed 16 June 1987)

1. **Partnership § 8— death of partner—net value of interest—jury question**

A section of a partnership agreement providing that a deceased partner is a defaulting partner and that a defaulting partner is entitled to the net value of his interest in the partnership should have been applied in an action by a partnership to acquire the partnership interest of two deceased partners; however, since the term "net value" is ambiguous, a jury question was presented as to whether "net value" means net book value or market value.

**2. Pleadings § 33.3— denial of motion to amend answer and counterclaim**

> The trial court did not err in denying defendants' motion to amend their answer and counterclaim to deny an earlier admission.

APPEAL by defendants from *Stephens, Judge.* Judgment and Order entered 26 June 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 8 April 1987.

Plaintiff alleged that its principal business is the ownership and operation of the Walker Street Apartments in Cary, North Carolina. In 1970, a partnership agreement was entered into between Ronnie Snotherly, Donald Bland, Jerry Cook, William McCuiston, James McMillan, Curtis Westbrook, Carl Broaddus and Randolph Brunson. In 1971, Brunson withdrew from the partnership and sold his interest to the remaining partners. At that time a second partnership agreement was drafted and signed by the seven remaining partners.

Section 7 of the 1971 Partnership Agreement states in part:

> Should any partner become a defaulting partner in this partnership, the partnership shall have the election to defer payment of the net value of said defaulting partner's interest in said partnership up to and including one year after notice by the defaulting partner that he desires to withdraw from the partnership. A defaulting partner shall include one or more of the following:
>
> 1. A partner who desires to withdraw as a participating partner in said partnership;
>
> 2. A partner who shall die; and
>
> 3. A partner who is declared by a majority vote of the partnership that said partner is a defaulting partner as a result of inattendance at partnership meetings or a partner who fails to assume partnership responsibilities deligated [sic] to him by a majority vote of said partnership.
>
> The net value shall be determined quarterly by a majority vote of the partnership.

Section 19 of the Agreement states:

At no time while this contract is in effect shall any of the partners sell, assign, pledge or hypothecate his interest in the partnership without the consent of a majority vote of the partners.

If, notwithstanding this provision, any stranger to this contract should in any manner whatsoever acquire legal title to the interest of any partner, or any part of such interest, the remaining partners may at their option collectively purchase such transferred interest at a price to be determined by a majority vote of the partnership.

William McCuiston died in 1972 and Donald Bland died in 1980. In 1983, Carl Broaddus sold his interest to the partnership.

The remaining partners (Snotherly, Cook, McMillan and Westbrook) attempted to acquire the partnership interests of Bland and McCuiston but were unable to reach an agreement with defendants.

Plaintiff then brought this action for a declaratory judgment and requested that the court determine 1) the rights and obligations of the parties as to the terms of the partnership agreement and 2) the value of the partnership interests of Donald Bland and William McCuiston. Defendants filed a counterclaim and a third-party complaint alleging such claims as fraud, wrongful attempt to expel partners and conversion of partnership assets.

The matter came on for jury trial before Judge Stephens. After plaintiff presented some of its evidence, the trial court applied Section 19 of the Partnership Agreement and determined that there was no factual question to be submitted to the jury. The trial court entered judgment for plaintiff. The Judgment and Order states in pertinent part that

as a matter of law, Development Enterprises of Raleigh . . . has the right to purchase the outstanding partnership interest of any deceased partner for an amount determined by a majority vote of the partnership; and that a majority of partners of Development Enterprises of Raleigh voted in late 1981, effective January 1, 1982, to purchase the outstanding partnership interest of all persons claiming under Donald E. Bland, deceased, and to purchase the outstanding partnership interest of all persons claiming under William T. McCuiston,

deceased, for the sum of the net book value, or capital account, . . . .

The Judgment and Order further states "[t]hat the defendants have failed to produce any evidence or proof in support of their counterclaims against the plaintiff or in support of their claims against the third-party defendants." From the Judgment and Order of the trial court, defendants appeal.

*James L. Blackburn; and Stephen T. Daniel & Associates, by Stephen T. Daniel and Thomas C. Grella, for defendant appellants.*

*Boxley, Bolton & Garber, by Ronald H. Garber, for plaintiff and third-party defendant appellees.*

ARNOLD, Judge.

[1] A contract must be considered as a whole, considering each clause and word with reference to other provisions and giving effect to each if possible by any reasonable construction. *State v. Corl,* 58 N.C. App. 107, 293 S.E. 2d 264 (1982); *see also* 4 Williston on Contracts § 619 (3d ed. 1961). When general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specifics. *Wood-Hopkins Contracting Co. v. N.C. State Ports Auth.,* 284 N.C. 732, 202 S.E. 2d 473 (1974); *see also* 3 Corbin on Contracts § 547 (1960).

Section 7 of the Partnership Agreement specifically deals with the death of a partner. Section 19 prohibits the partners from transferring their interests and provides that the remaining partners may purchase such transferred interest at a price determined by a majority vote. The trial court applied section 19 and concluded that defendants were strangers to the partnership agreement. The court further determined that section 19 enabled the remaining partners to purchase Bland's and McCuiston's interests from defendants for net book value.

The trial court inappropriately applied section 19 to the interests of the deceased partners. While section 19 deals generally with transferred partnership interests, it is section 7 that defines a deceased partner as a defaulting partner and provides that a defaulting partner is entitled to the net value of his interest in

the partnership. Therefore, section 7 must be used to determine the value of defendants' interests.

However, section 7 is ambiguous with respect to the term "net value." When an agreement is ambiguous, it is for the jury to determine the parties' intent. *Asheville Mall, Inc. v. F. W. Woolworth Co.*, 76 N.C. App. 130, 331 S.E. 2d 772 (1985). Whether "net value" as used in the partnership agreement means net book value or market value is a question for the jury. Thus, we remand the case for a new trial for a jury determination of the meaning of "net value" as used in section 7 of the Partnership Agreement.

Defendants contend that they were denied the opportunity to present their claims against plaintiff and the third-party defendants. We disagree.

The trial judge asked defendants what evidence they had to support their claims and allowed them to offer proof of their claims for the record. After reviewing the record, we find no evidence in support of defendants' claims. The trial court did not err in dismissing defendants' claims against plaintiff and the third-party defendants.

[2] Defendants also contend that the trial court erred in denying their motion to amend their answer and counterclaim. We disagree.

A motion to amend is directed to the discretion of the trial court. *Smith v. McRary*, 306 N.C. 664, 295 S.E. 2d 444 (1982). The exercise of the court's discretion is not reviewable absent a clear showing of abuse. *Id.* Reasons justifying denial of an amendment are (a) undue delay, (b) bad faith, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments. *Martin v. Hare*, 78 N.C. App. 358, 337 S.E. 2d 632 (1985).

Defendants sought to amend their answer and counterclaim in order to deny an earlier admission that plaintiff owned the Walker Street Apartments. The motion was made shortly before trial and approximately two years after the admission had been made. Defendants have not carried their burden of proving that the trial court abused its discretion in denying their motion to amend.

We have reviewed defendants' remaining assignments of error and find them to be without merit. Accordingly, the judgment of the trial court is affirmed with respect to the dismissal of defendants' claims but remanded for a new trial for a determination of the meaning of "net value" in section 7 of the Partnership Agreement.

Affirmed in part, reversed in part and remanded.

Judges WELLS and ORR concur.