MOSLEY & MOSLEY BUILDERS, INC. v. LANDIN LTD., AND CARL W. JOHNSON

No. 8918SC198

(Filed 20 March 1990)

1. **Rules of Civil Procedure § 15.1 (NCI3d) — amendment of complaint after remand — no abuse of discretion**

    The trial court did not abuse its discretion by granting plaintiff's motion to amend his complaint prior to a second trial where plaintiff filed an original action for damages resulting from breach of a lease; a verdict for plaintiff was remanded for a new trial; and the trial court allowed plaintiff to amend the complaint and assert claims for punitive damages and unfair and deceptive trade practices. Defendants have shown no prejudice resulting from granting the motion to amend and the sufficiency of the complaint in stating grounds for relief is not the standard utilized in determining a motion to amend pleadings.

    **Am Jur 2d, New Trial §§ 64, 587.**

2. **Unfair Competition § 1 (NCI3d) — breach of lease — unfair and deceptive trade practice**

    The trial court did not err in an action arising from a breach of a lease by permitting evidence on a claim for unfair and deceptive trade practices or by submitting that issue to the jury. *Marshall v. Miller*, 302 N.C. 539, did not limit N.C.G.S. § 75-16 only to those situations where small monetary damages were involved; the rental of commercial properties satisfies the commerce requirement of N.C.G.S. § 75-1.1; plaintiff alleged conduct by defendants which would have a tendency to mislead or deceive; and there was competent evidence justifying the submission of each issue to the jury.

    **Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

3. **Damages § 17.7 (NCI3d) — breach of lease — punitive damages**

    An assignment of error regarding punitive damages in an action arising from the breach of a lease was moot where the jury awarded punitive damages but plaintiff elected to

MOSLEY & MOSLEY BUILDERS v. LANDIN LTD.

[97 N.C. App. 511 (1990)]

accept compensatory damages which were then trebled pursuant to N.C.G.S. § 75-16.

**Am Jur 2d, Damages § 817.**

4. **Landlord and Tenant § 4 (NCI3d) — sale of leased property — action for breach of lease against new landlord — conversations occurring during original lease negotiations**

The trial court did not err in an action arising from the breach of a lease by a new landlord by admitting conversations occurring during the original lease negotiations where there was evidence that defendants were made aware of the lease at the time of their purchase of the mall and the trial court merely allowed the introduction of extrinsic evidence to explain the meaning of ambiguous provisions in the lease. Moreover, plaintiff's allegations of fraud do not rest on the lease negotiations but are based on defendant's behavior in leading plaintiff on with false assurances while negotiating with another for a new lease of the already leased premises.

**Am Jur 2d, Landlord and Tenant §§ 38, 39.**

5. **Damages § 3.5 (NCI3d) — breach of lease — lost profits — evidence admissible**

The trial court did not err in an action arising from the breach of a lease by admitting testimony on the issue of prospective lost profits using calculations based on the sales of the successor tenant where the action was being heard after a remand on appeal; the issue was disposed of in the first appeal adversely to defendant; and the differences in the two businesses relate only to the weight to be given the evidence.

**Am Jur 2d, Landlord and Tenant §§ 183, 187.**

6. **Landlord and Tenant § 4 (NCI3d) — sale of leased property — breach of lease by new landlord — conversations concerning original written agreement**

The trial court did not err in an action arising from a breach of a lease by a successor landlord by admitting conversations concerning the original written agreement before defendants purchased the mall where the matter was being heard on remand following appeal and the first appeal determined

MOSLEY & MOSLEY BUILDERS v. LANDIN LTD.

[97 N.C. App. 511 (1990)]

that the conversations were admissible to determine the meaning of ambiguous provisions.

**Am Jur 2d, Landlord and Tenant §§ 95, 103; Vendor and Purchaser § 660.**

7. **Landlord and Tenant § 4 (NCI3d)— sale of leased property— breach of lease by new landlord—instructions**

The trial court did not err in an action arising from the breach of a lease by a successor landlord by instructing the jury that the lease could be construed against the party who drafted the instrument even though defendants did not in fact draft the agreement. Defendants, as purchasers of the leased property, were subject to the same rights and obligations as the original landlord, which drafted the lease.

**Am Jur 2d, Landlord and Tenant §§ 95, 103; Vendor and Purchaser § 660.**

8. **Evidence § 15.2 (NCI3d)— breach of lease—evidence of plaintiff's emotions and future—admissible**

The trial court did not err in an action arising from the breach of a lease by admitting evidence of plaintiff's (lessee's) emotions and future where his testimony concerning his reaction to the news that his property had been removed from the mall was relevant and not unfairly prejudicial, the court did not abuse its discretion by admitting testimony concerning plaintiff's future intentions, and the trial court's comments were explanations of its evidentiary rulings.

**Am Jur 2d, Landlord and Tenant § 327.**

9. **Trial § 15 (NCI3d)— breach of lease—control of cross-examination—no abuse of discretion**

The trial court did not abuse its discretion in an action arising from the breach of a lease by failing to control the allegedly voluminous objections by plaintiff's counsel during defendant's cross-examination of witnesses. N.C.G.S. § 8C-1, Rule 611.

**Am Jur 2d, Trial § 192.**

APPEAL by defendants from judgment entered 24 August 1988 by *Judge James M. Long* in GUILFORD County Superior Court. Heard in the Court of Appeals 11 October 1989.

This is an appeal from an action for damages allegedly resulting from breach of a lease. On 16 February 1981, plaintiff executed a lease agreement with defendants' predecessors in interest, Pomona Associates, for space in Pomona Factory Outlet Mall d/b/a Greensboro Outlet Mall. Plaintiff entered the lease to operate a retail store, "Nuts 'N Such," to sell nuts, candies, and drinks. The space leased by plaintiff was on the first floor of Building I and was designated on Exhibits A-1 and A-2 which were attached to the lease. The lease agreement referred to the project as Pomona Factory Outlet Mall, Phase I.

On 27 July 1981, defendants purchased the project and all leases then outstanding, including plaintiff's lease. Plaintiff continued to operate his business in the mall. On 29 June 1983, plaintiff received a letter from Jim Stutts, the mall director, indicating that plaintiff's business would be moved to the "galley gardens" section of the mall. Shortly before receiving this letter, plaintiff had received a letter from defendants wishing him continued success and another profitable year. In the 29 June 1983 letter, Stutts indicated that he was authorized to relocate plaintiff pursuant to paragraph 28 of the lease agreement which provided that

> [l]andlord shall have the right to relocate Tenant, at Landlord's cost and expense, within Pomona Factory Outlet Mall, Phase I, upon sixty (60) days notice to Tenant, which relocation shall in no way affect the obligations and duties of either party hereunder. In the event Tenant refuses to accept the new location designated by Landlord, Landlord at its option may cancel and terminate this Lease by an additional thirty (30) days written notice to tenant.

Plaintiff's counsel, Lawrence McGee, replied to the 29 June 1983 letter, informing the mall director that the contemplated new site was not within Phase I of the project as required by paragraph 28 of the lease. Plaintiff's counsel's letter stated that he had contacted the architect for the project who had advised him that Phase I of the project included only the main floor of the building where plaintiff was currently located.

At trial, plaintiff testified that during the initial negotiations to lease the mall space, he was told by Bobby Slate, a leasing agent for Pomona Associates, that Phase I, which was currently being developed, consisted of the main floor of buildings one and two and the connecting corridor which contained restrooms. In

the lease, paragraph 7 stated that the project consisted of 130,000 square feet which included the "galley garden" area. However, the site plan that was attached to the lease and designated as Phase I provided that there was 78,760 square feet of building area and that other areas were reserved for future development. The lease provided that areas not included in the lease were not contemplated by the lease.

Plaintiff refused to relocate his shop to the "galley garden" area. Defendant Carl Johnson then wrote plaintiff to disagree with plaintiff's counsel's interpretation of the lease. Defendant Johnson's letter stated that he disagreed with McGee's statement that " 'unfortunately, the specific areas of the mall within Phase I of the project are not defined in the lease or demarcated on any of the exhibits.' " Defendant Johnson's letter then gave notice of termination if plaintiff would not vacate the main floor area. During this period, plaintiff learned that defendants intended to lease the area that he currently occupied to a nationally owned franchise named "Peanut Shack."

On 4 October 1983, defendants' agents physically removed plaintiff's store from the Greensboro Outlet Mall. Plaintiff then negotiated for and obtained a space in Durham, North Carolina.

Plaintiff then brought this action for damages. At trial, the jury returned a verdict in favor of plaintiff for $120,000. Both parties entered timely notice of appeal from that judgment. This court reversed the lower court and remanded the action for a new trial because the trial court's instructions on the issue of defendants' breach were incomplete and because plaintiff had been prevented from presenting competent evidence of all of its damages. At the retrial judgment was again entered for the plaintiff. Defendants appeal.

*Adams, Kleemeier, Hagan, Hannah & Fouts, by Joseph W. Moss and Trudy A. Ennis, for plaintiff-appellee.*

*Floyd, Greeson, Allen and Jacobs, by Jack W. Floyd and Constance F. Jacobs, for defendant-appellants.*

EAGLES, Judge.

I.

[1] Defendants contend that the trial court committed prejudicial error when it allowed plaintiff on remand from this court to amend

the complaint and assert claims for punitive damages and unfair and deceptive trade practices, received evidence on those claims and submitted those issues to the jury. Defendants argue that the allegations of the amended complaint do not state a claim for punitive damages or for unfair trade practices when considered with the lease provisions. We disagree.

"A motion to amend is directed to the discretion of the trial court." *Development Enterprises v. Ortiz*, 86 N.C. App. 191, 195, 356 S.E.2d 922, 925 (1987), *disc. rev. denied*, 320 N.C. 630, 360 S.E.2d 84, citing *Smith v. McRary*, 306 N.C. 664, 295 S.E.2d 444 (1982). "The exercise of the court's discretion is not reviewable absent a clear showing of abuse." *Id.* "Reasons justifying denial of an amendment are (a) undue delay, (b) bad faith, (c) undue prejudice, (d) futility of amendment, and (e) repeated failure to cure defects by previous amendments." *Id.* citing *Martin v. Hare*, 78 N.C. App. 358, 337 S.E.2d 632 (1985). "The burden is upon the opposing party to establish that that party would be prejudiced by the amendment." *Mauney v. Morris*, 316 N.C. 67, 72, 340 S.E.2d 397, 400 (1986), citing *Roberts v. Memorial Park*, 281 N.C. 48, 187 S.E.2d 721 (1972).

Here, defendants have shown no prejudice resulting from the granting of plaintiff's motion to amend his complaint to assert claims for punitive damages and unfair and deceptive trade practices. The motion to amend was made after remand from this court but prior to the new trial. While this court previously determined that the trial court had not abused its discretion in denying plaintiff's motion to amend at the close of all evidence in the first trial to assert claims for punitive damages and unfair and deceptive trade practices, we note that plaintiff's counsel had stated during the first trial that plaintiff was not seeking treble damages. Here, before the second trial began, those concerns were not present. Defendants argue that the complaint was insufficient to support the additional claims since their actions were based upon their interpretation of the lease. The sufficiency of the complaint in stating grounds for relief is not the standard utilized in determining a motion to amend pleadings. Accordingly, the trial court did not abuse its discretion in granting plaintiff's motion to amend his complaint prior to the second trial.

### A. Unfair and Deceptive Trade Practices

[2] Defendants next contend that the trial court erred in permitting evidence on the claim of unfair and deceptive trade practices

and erred in submitting this issue to the jury. Defendants contend that *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981), dictates a finding that no unfair trade practice occurred since the acts complained of may be adequately compensated by money damages and that there was virtually no impact on commerce. We disagree.

In *Marshall, supra,* our Supreme Court stated that:

Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. *Id.* at 262-63, 266 S.E.2d at 621. A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Id.* at 263, 266 S.E.2d at 621. As also noted in *Johnson*, under Section 5 of the FTC Act, a practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required. *Id.* at 265, 266 S.E.2d at 622; *Trans World Accounts, Inc. v. Federal Trade Commission*, 594 F. 2d 212 (9th Cir. 1979); *Resort Car Rental System, Inc. v. Federal Trade Commission*, 518 F. 2d 962 (9th Cir.), *cert. denied sub nom. MacKenzie v. United States*, 423 U.S. 827 (1975). Consistent with federal interpretations of deception under Section 5, state courts have generally ruled that the consumer need only show that an act or practice possessed the tendency or capacity to mislead, or created the likelihood of deception, in order to prevail under the states' unfair and deceptive practices act. *Johnson v. Insurance Co.*, 300 N.C. 247, 265-66, 266 S.E.2d 610, 622 (1980); Annot. 89 ALR 3d 449, 465; *see Leaffer v. Lipson, supra* at 535 and the numerous cases cited in n. 87.

If unfairness and deception are gauged by consideration of the effect of the practice on the marketplace, it follows that the intent of the actor is irrelevant. Good faith is equally irrelevant. What is relevant is the effect of the actor's conduct on the consuming public. Consequently, good faith is not a defense to an alleged violation of G.S. 75-1.1.

*Id.* at 548, 276 S.E.2d at 403.

"As an essential element of a cause of action under G.S. 75-16, plaintiff must prove not only that defendants violated G.S. 75-1.1, but also that plaintiff has suffered actual injury as a proximate result of defendants' misrepresentation." *Bailey v. LeBeau*, 79 N.C.

App. 345, 352, 339 S.E.2d 460, 464 (1986), *decision affirmed as modified* by 318 N.C. 411, 348 S.E.2d 524 (1986), citing *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 268 S.E.2d 271 (1980). A mere breach of contract does not constitute an unfair or deceptive trade practice. *Coble v. Richardson*, 71 N.C. App. 511, 322 S.E.2d 817 (1984). The conduct must be fraudulent or deceptive. *Id.* " '[A] party is guilty of an unfair act or practice when it engages in conduct that amounts to an inequitable assertion of its power or position.' " *Id.* quoting *Libby Hill Seafood Restaurants, Inc. v. Owens*, 62 N.C. App. 695, 700, 303 S.E.2d 565, 569, *disc. rev. denied*, 309 N.C. 321, 307 S.E.2d 164 (1983).

Defendants contend that if adequate money damages are available, the *Marshall* court implies there is no need to treble those damages. The Supreme Court in *obiter dictum* stated that one of the purposes of the provision for treble damages was to make "more economically feasible the bringing of an action where the possible money damages [were] limited." *Id.* at 549, 276 S.E.2d at 404. Contrary to defendants' contentions, by that language the *Marshall* court did not restrict G.S. 75-16 to apply only to situations where small monetary damages were involved.

Defendants also contend that plaintiff's alleged injury does not impact on commerce. We disagree. We have previously held that the rental of commercial property satisfies the commerce requirement of G.S. 75-1.1. *Kent v. Humphries*, 50 N.C. App. 580, 589, 275 S.E.2d 176, 183 (1981), *aff'd and modified*, 303 N.C. 675, 281 S.E.2d 43 (1981).

In *Love v. Pressley*, 34 N.C. App. 503, 239 S.E.2d 574 (1977), *cert. denied*, 294 N.C. 441, 241 S.E.2d 843 (1978), this court addressed whether trespass and conversion of property by a landlord could constitute unfair and deceptive trade practices under G.S. 75-1.1. *Love* arose under the pre-1977 version of G.S. 75-1.1 which was more narrow in scope than the current statute. In *Love*, the jury found that the defendant or his agent trespassed upon plaintiffs' premises and converted plaintiffs' personal property by refusing to return the property upon demand. There, the parties stipulated that defendant had not evicted plaintiffs from the premises pursuant to any judicial process. This court stated that the purpose of G.S. 75-1.1(b) was to provide "means of maintaining 'ethical standards of dealings . . . between persons engaged in business and the consuming public' and to promote 'good faith and fair dealings

## MOSLEY & MOSLEY BUILDERS v. LANDIN LTD.
[97 N.C. App. 511 (1990)]

between buyers and sellers. . . .' " *Id.* at 517, 239 S.E.2d at 583. We held that defendant's conduct in *Love* constituted unfair or deceptive acts or practices in violation of G.S. 75-1.1 and affirmed the treble damages award.

Here plaintiff alleged conduct by defendants which would have a tendency to mislead and deceive. On 15 June 1983 (just two weeks prior to the defendants' 29 June 1983 relocation letter), defendants wrote plaintiff stating: "[w]e look forward to another profitable year at The Greensboro Outlet Mall and wish you every success!" Plaintiff's other evidence was that defendants attempted to relocate him to an area not contemplated by the lease and without a reasonable belief cited his violation of the terms of the lease as grounds for relocating plaintiff. In addition, there was evidence that even while the 15 June 1983 "good wishes" letter was being sent, defendants were negotiating for lease of plaintiff's space to a national franchise with a similar retail sales operation. Plaintiff alleged that because of his forced relocation, his business was injured and he suffered lost profits.

Like the defendant in *Love*, *supra*, the defendants here wrongfully entered plaintiff's premises relying on defendants' interpretation of ambiguous provisions of the lease. Defendants were aware of plaintiff's disagreement with their interpretation .of the ambiguous sections of the lease, but elected to physically remove his merchandise and property in the early morning hours to a truck rented for that purpose. At the time of his eviction and removal of his property, plaintiff was rightfully on the premises. A jury has since found that defendants breached the lease agreement. These actions were sufficient to support a claim for unfair and deceptive trade practices.

Defendants also argue that the courts have generally held that where the alleged wrongdoings occurred after a contract's execution, the subsequent action does not fall within the scope of Chapter 75. They rely on *American Craft Hosiery Corp. v. Damascus Hosiery Mills, Inc.*, 575 F. Supp. 816 (W.D.N.C. 1983), as authority. Since defendants' conduct could be considered unfair and deceptive under the rationale of *Love*, 34 N.C. App. 503, 239 S.E.2d 574, we find this contention unpersuasive.

Defendants contend that the trial court erred in submitting issues of unfair and deceptive trade practices to the jury because

there was insufficient evidence of the conduct alleged. The trial court submitted the following issues to the jury:

(1) Do you find by the greater weight of the evidence that any breach of contract by the defendants was intentional and for the purpose of causing the plaintiff's business to move out of the mall;

(2) Did either defendant or an agent of either defendant intentionally require plaintiff to relocate outside "Phase I" Mall space because he knew the plaintiff's business could not succeed there;

(3) Did either defendant or an agent of either defendant represent to the plaintiff his approval of plaintiff's business operations while defendants were actually negotiating with another possible tenant for the same space then occupied by plaintiff;

(4) Did either defendant or an agent of either defendant require the plaintiff, under the alleged authority of their lease agreement, to move to a space such defendant or agent knew was not within "Phase I" of the mall and thereafter cause the plaintiff's merchandise and fixtures to be removed from the mall because plaintiff failed to comply with the requirement?

"To justify the submission of an issue it must not only arise on the pleadings, but must be supported by competent evidence." *Morris Speizman Company, Inc. v. Williamson*, 12 N.C. App. 297, 304, 183 S.E.2d 248, 252, *cert. denied*, 279 N.C. 619, 184 S.E.2d 113 (1971), citing *Gunter v. Winders*, 256 N.C. 263, 123 S.E.2d 475 (1962). "The right of trial by jury should be carefully preserved, and if there is any evidence, more than a scintilla, it is a matter for the jury and not the court." *Moseley v. Atlantic Coast Line R.R. Co.*, 197 N.C. 628, 636, 150 S.E. 184, 188 (1929).

Here, there was competent evidence justifying the submission of each issue to the jury. On the first issue, the plaintiff introduced testimony from defendant Carl Johnson who stated that the Celido Corporation lease would produce more rental income than the plaintiff's lease. Defendant Johnson even testified that he was replacing plaintiff's store with the Peanut Shack "because they [sic] were going to pay more rent, bring a better image to the mall, be better for merchants in the mall and help his [plaintiff's] operation when he moved it to another location." Finally, plaintiff testified that

defendant admitted that plaintiff would not break even in the basement. Plaintiff testified that the defendant said if he had known that plaintiff would pay more rent for the original space and that plaintiff had had an increase in sales, he would not have negotiated the lease with Peanut Shack. Accordingly, the trial court properly submitted the first issue.

On the second issue, there was also adequate competent evidence. Defendant Johnson testified that he thought plaintiff would survive in the basement, but admitted that he knew that it was not in plaintiff's best interest to move to the basement and that it would hurt plaintiff's sales in the beginning. He testified that when making the initial decision to move plaintiff, he was "not even thinking in terms of Phase I." This testimony was sufficient to justify the submission of the second issue.

On the third issue, plaintiff introduced a letter in which defendants indicated approval of plaintiff's business just two weeks before their letter giving notice of their intention to relocate plaintiff. Plaintiff also introduced evidence that even before sending the 13 June 1983 congratulatory letter to plaintiff, defendants were negotiating with Celido Corporation to lease the same space plaintiff then occupied. This evidence is sufficient to justify submitting the third issue.

On the fourth issue, plaintiff introduced evidence that defendant Johnson moved his business pursuant to defendants' interpretation of the lease. Defendant Johnson testified that he evicted plaintiff from the mall after considering and discussing the disputed lease provisions with people in the industry to see if he was correct in his interpretation of a lease that plaintiff and not defendant negotiated. When replying to defendants' relocation letter, plaintiff's counsel pointed out their different interpretation of the lease. The fourth issue was properly submitted.

## B.  Punitive Damages

[3]  Defendants next contend that the trial court erred in allowing plaintiff on remand from this court to amend the complaint and inject a claim for punitive damages, receiving "voluminous" evidence on this claim and submitting it to the jury. Defendants argue that there was no aggravating tort in addition to breach of contract justifying an award of punitive damages. We disagree.

At the outset, we note that while the jury awarded punitive damages, in lieu of punitive damages, plaintiff elected to accept compensatory damages which were then trebled pursuant to G.S. 75-16. Since the judgment did not award plaintiff punitive damages, defendants' appeal on this issue is moot and this assignment of error is overruled.

## C. The Evidence

[4] Defendants finally argue that since they had nothing to do with the negotiation and execution of the lease, they cannot be held responsible for conversations occurring during the original lease negotiations. They argue that they did not mislead plaintiff about his rights and duties under the lease prior to its execution. Defendants cite *Herring v. Volume Merchandise, Inc.*, 249 N.C. 221, 106 S.E.2d 197 (1958), for the proposition that a lease is not binding on purchasers of leased property who are not made aware of it. We disagree.

*Herring* was a statute of frauds case which addressed the issue of whether a parol offer to surrender a lease having more than three years to run was binding on plaintiffs who were not parties to the lease. Here, there is evidence that defendants were in fact made aware of the lease at the time of their purchase of the mall since they purchased all outstanding leases. The trial court merely allowed the introduction of extrinsic evidence to explain the meaning of ambiguous provisions in the lease. Defendants' contention is without merit especially in view of the fact that plaintiff's allegations of fraud do not rest on the lease negotiations but are based on defendants' behavior in "leading plaintiff on" with false assurances while negotiating with another for a new lease of the already leased premises.

## II.

[5] Defendants next assign as error the trial court's admission of evidence and instruction to the jury on the issue of lost profits. Defendants argue that the trial court erred in allowing detailed testimony on the issue of prospective lost profits using calculations based on the sales of their successor tenant, the Peanut Shack. Defendant contends there is no evidence that the businesses were comparable. We disagree.

[A]s a general rule when an appellate court passes on a question and remands the cause for further proceedings,

MOSLEY & MOSLEY BUILDERS v. LANDIN LTD.

[97 N.C. App. 511 (1990)]

the questions there settled become the law of the case, both in subsequent proceedings in the trial court and on subsequent appeal, provided the same facts and the same questions which were determined in the previous appeal are involved in the second appeal.

*Hayes v. Wilmington*, 243 N.C. 525, 536, 91 S.E.2d 673, 681-2 (1956). "The rule that a decision of an appellate court is ordinarily the law of the case, binding in subsequent proceedings, is basically a rule of procedure rather than of substantive law, and must be applied to the needs of justice with a flexible, discriminating exercise of judicial power." *Id.* at 537, 91 S.E.2d at 682.

Defendants argued in the first trial that because plaintiff's marketing and management practices differed substantially from the Peanut Shack, it was unreasonably speculative to use Peanut Shack's sales as a basis for determining plaintiff's profits. This court disposed of the issue in the first appeal adversely to defendant. *Mosley & Mosley Builders v. Landin Ltd.*, 87 N.C. App. 438, 446, 361 S.E.2d 608, 613 (1987), *cert. dismissed*, 322 N.C. 607, 370 S.E.2d 416 (1988).

Damages for breach of contract may include loss of prospective profits where the loss is the natural and proximate result of the breach. *Perkins v. Langdon*, 237 N.C. 159, 74 S.E.2d 634 (1953). To prove lost profits, the injured party "must prove as part of his case both the amount and cause of his loss. Absolute certainty, however, is not required, but both the cause and the amount of loss must be shown with reasonable certainty." *Cary v. Harris*, 178 N.C. 624, 628, 101 S.E. 486, 488 (*1919*), *quoting Nance v. Western Union Tel. Co.*, 177 N.C. 313, 98 S.E. 838 (1919). If an established business is wrongfully interrupted, the damages can be proved by showing the profitability of the business for a reasonable time before the wrongful act. *Id.* It is only "when prospective profits are conjectural, remote, or speculative, they are not recoverable." *Perkins v. Langdon, supra*, at 173, 74 S.E.2d at 645. *Accord Weyerhaeuser Co. v. Godwin Building Supply Co., Inc.*, 292 N.C. 557, 234 S.E.2d 605 (1977).

Evidence that plaintiff's Nuts N' Such store had been profitable up until the time of the alleged breach, and that its sales had increased as new stores had opened in the mall, showed that the business "had been successfully conducted

for such length of time that the profits thereof were reasonably ascertainable." *Perkins v. Langdon, supra*, at 174, 74 S.E.2d at 646. Peanut Shack and Nuts N' Such sold similar merchandise; evidence of Peanut Shack's sales from plaintiff's former location was relevant to show the sales which plaintiff might reasonably have expected to make had it not been evicted. Differences in marketing techniques between the two stores went only to the weight to be given such evidence by the jury; these differences were not such as to render the evidence unreasonably remote or speculative upon the issue of plaintiff's opportunity to make future profits had it not been evicted.

*Id.* at 446, 361 S.E.2d at 613.

In our opinion in the first appeal we stated that if plaintiff is entitled to recover, he may recover "all damages actually and proximately resulting from the breach, including lost profits for the entire unexpired term of the lease, irrespective of whether it continued to operate its store at another location." *Id.* at 447, 361 S.E.2d at 614. In the second trial, plaintiff was allowed to present evidence of projected sales and profits using past operations and the Peanut Shack's operation as a basis. In the first opinion, we stated that such evidence "was not unreasonably speculative or remote and provided a basis for the measurement of plaintiff's damages with sufficient certainty as to be competent and admissible." *Id.*

Defendants argue that the evidence introduced at the subsequent trial established drastic differences in the two business operations, products and premises. As we previously held, these differences only relate to the weight to be given to the evidence. *Mosley & Mosley Builders v. Landin Ltd., supra.* This assignment of error must also fail.

### III.

[6] Defendants next contend that the trial court erred by placing them in the same position as the original lessor and that evidence about conversations concerning the written agreement before defendants purchased the mall was improperly admitted. Defendants now argue that the conversations were oral modifications, amendments or explanation of the written lease that the purchasers Landin and Johnson did not know about and to which they were not privy. We disagree.

MOSLEY & MOSLEY BUILDERS v. LANDIN LTD.

[97 N.C. App. 511 (1990)]

In the first appeal we determined that these conversations were admissible to determine the meaning of ambiguous provisions. Based on this prior determination of admissibility, we will not now require exclusion of these conversations.

[7] Defendants also contend that the trial court erred in instructing the jury that the lease should be construed against the party who drafted the instrument when they did not in fact draft the lease agreement. We disagree.

> [O]rdinarily the owner of leased property may sell it during the term of a lease, and in the absence of a covenant to the contrary the lessee cannot prevent the landlord from selling the premises subject to the lease or resist a change of landlords, or ground a cause of action on such transfer and change of landlords. . . . [T]ransfer of the reversion, subject to the lease, neither terminates the leasehold estate nor deprives the tenant of any of his rights in the land.

*Perkins v. Langdon*, 237 N.C. 159, 164, 74 S.E.2d 634, 639 (1953) (citations omitted).

Defendants, as purchasers of the leased property from Pomona Associates (who drafted the lease), were subject to the same rights and obligations as Pomona. Accordingly, the trial court did not err in its instruction.

## IV.

[8] Defendants next assign as error the admission of irrelevant or prejudicial evidence and the trial court's expression of opinion during the trial proceedings. Defendants contend that the trial court erred in admitting plaintiff's testimony about his emotions and future because it was either irrelevant or prejudicial. We disagree.

G.S. 8C-1, Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Rule 403, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." Evidence which is not relevant is not admissible under Rule 403. Whether or not to exclude evidence under this rule is within the

sound discretion of the trial judge. *State v. Mason*, 315 N.C. 724, 340 S.E.2d 430 (1986).

Defendants first contend that the trial judge should not have allowed plaintiff to testify about his state of emotions when he found out that he had been evicted from the mall. After careful review, we find that plaintiff's testimony concerning his reaction to the news that his property had been removed from the mall was relevant and not unfairly prejudicial.

Secondly, defendants contend that the trial court should not have allowed plaintiff to testify about his future intentions since they were highly speculative. On this record we hold the trial court did not abuse its discretion.

Thirdly, defendants contend that they were prejudiced by the trial court's comments. The record shows that the trial court's comments were explanations of its evidentiary rulings. On this record we conclude that defendants were not prejudiced by the trial court's comments.

V.

[9] Defendants finally assign as error the trial court's restriction of the scope of cross-examination by its failure to control the allegedly "voluminous" objections by plaintiff's counsel during defendants' cross-examination of witnesses. Defendants contend that "[t]he trial court in this case completely destroyed the Landlord's right to fully and effectively cross-examine the witnesses by sustaining unfounded objections and failing to limit endless unfounded objections whose purpose was solely to disrupt the flow of testimony and confuse the jury; a purpose quite successfully accomplished." We disagree.

G.S. 8C, Rule 611 provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." On cross-examination much latitude is given counsel in testing for consistency and plausibility matters related by a witness on direct examination. *Maddox v. Brown*, 233 N.C. 519, 524, 64 S.E.2d 864, 867 (1951). "Finally, the legitimate bounds of cross-examination are largely within the discretion of the trial judge." *State v. Burgin*, 313 N.C. 404, 407, 329 S.E.2d 653, 656 (1985); *State v. Cox*, 296 N.C. 388, 250 S.E.2d 259 (1979). "Its rulings should not be disturbed except when prejudicial error is disclosed."

CORUM v. UNIVERSITY OF NORTH CAROLINA

[97 N.C. App. 527 (1990)]

*Id.* citing *State v. Ross*, 275 N.C. 550, 553, 169 S.E.2d 875, 878 (1969), *cert. denied*, 397 U.S. 1050, 90 S.Ct. 1387, 25 L.Ed. 2d 665 (1970).

Defendants' exceptions pertain to their cross-examination of plaintiff and plaintiff's accountant. Defendants contend that their cross-examination efforts were hindered by the voluminous objections offered by plaintiff's counsel.

After careful review of the record, we find no abuse of discretion.

Because defendants failed to brief assignment of error numbers 5, 10, and 11, these assignments of error are deemed abandoned. Rule 28, Rules of App. Procedure.

For the reasons stated, we find no error.

No error.

Judges PARKER and GREENE concur.