**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 07-1237**

---

STRATEGIC OUTSOURCING, INCORPORATED,

Plaintiff - Appellee,

v.

CONTINENTAL CASUALTY COMPANY,

Defendant - Appellant.

---

**No. 07-1279**

---

STRATEGIC OUTSOURCING, INCORPORATED,

Plaintiff - Appellant,

v.

CONTINENTAL CASUALTY COMPANY,

Defendant - Appellee.

---

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., Chief District Judge. (3:02-cv-00540)

---

Argued: March 19, 2008                    Decided: April 16, 2008

---

Before Sandra Day O'CONNOR, Associate Justice (Retired), Supreme Court of the United States, sitting by designation, and MOTZ and SHEDD, Circuit Judges.

———————————

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

———————————

**ARGUED:** Lynn H. Murray, GRIPPO & ELDEN, Chicago, Illinois, for Continental Casualty Company. Edmund M. Kneisel, KILPATRICK & STOCKTON, L.L.P., Atlanta, Georgia, for Strategic Outsourcing, Incorporated. **ON BRIEF:** Gary M. Elden, Patrick T. Nash, Donald P. Bunnin, GRIPPO & ELDEN, Chicago, Illinois; Douglas Marshall Jarrell, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for Continental Casualty Company. Adam H. Charnes, Elliot A. Fus, KILPATRICK & STOCKTON, L.L.P., Winston-Salem, North Carolina, for Strategic Outsourcing, Incorporated.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Continental Casualty Company (CNA) and Strategic Outsourcing, Inc. (SOI) entered into a contract under which CNA agreed to provide SOI with workers' compensation insurance for three years at a specified rate. Prior to the third year, CNA attempted to increase the rate on SOI's policy; the parties disagreed as to whether a certain clause in the contract permitted CNA to do so. Unable to resolve this disagreement, the parties terminated their relationship. SOI eventually brought this diversity action, involving North Carolina substantive law, against CNA asserting breach of contract, a common law "insurance bad faith" claim, and violation of a state statute; CNA counterclaimed for unpaid premiums. A jury awarded SOI over $10 million on its breach of contract claim, and awarded CNA approximately $750,000 on its claim for unpaid premiums. CNA appeals and SOI cross-appeals, each raising numerous issues. Because the contract limited SOI's damages to those incurred during the ninety days after cancellation of the contract, we must reverse and remand for the district court to reduce the judgment accordingly. In all other respects, we affirm.

I.

In March of 1998, CNA and SOI entered into a contract, memorialized in a "confirmation letter," under which CNA agreed to

3

provide SOI with workers' compensation insurance for three years at a rate of $3.40 per $100 of payroll. The contract included a clause allowing CNA to re-evaluate the $3.40 rate if "additional exposures, premiums anticipated[,] and prior losses" represented "significant changes from what has been contemplated herein" (the "re-rating clause"). The contract also included a cancellation clause, under which either party could terminate the agreement with ninety days' notice.

For almost two years, the parties performed under the contract without dispute. During this time, SOI's payroll more than doubled and the company expanded into a number of new cities. Prior to the third year, CNA advised SOI by letter dated October 26, 1999, that it planned to invoke the re-rating clause. After further discussions, and over SOI's objection, CNA confirmed by letter dated December 7 that it planned to raise SOI's $3.40 rate for the 2000 calendar year; on December 28, CNA sent SOI a proposal for a new policy at an increased rate. SOI did not accept this proposal. The parties then attempted to agree upon a policy at an increased rate and arranged for SOI's coverage to continue for the month of January at the old $3.40 rate while negotiations proceeded. The parties failed to reach a new agreement, and CNA advised SOI by letter dated February 14, 2000, that SOI's coverage had expired as of January 31, 2000, and that CNA would notify the appropriate state agencies that SOI had discontinued its coverage.

The parties then negotiated an "Extension Agreement," in which CNA agreed to provide SOI with insurance until February 29, 2000, at the $3.40 rate. SOI obtained a replacement policy from a different carrier for the remaining ten months of the 2000 calendar year, at a total additional cost of almost $8 million.

SOI then brought the instant action, claiming that CNA breached the original contract by refusing to renew its policy at the $3.40 rate and seeking in damages the additional cost of its replacement policy plus interest. SOI also asserted an "insurance bad faith" claim and a claim under the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA). CNA filed a counterclaim for unpaid premiums plus interest.

On the parties' cross-motions for summary judgment, the district court granted summary judgment to SOI on CNA's statute of limitations and modification defenses; CNA appeals these rulings. The court also granted summary judgment to CNA on SOI's UDTPA and "insurance bad faith" claims; SOI appeals these rulings. During trial, the district court ruled, as a matter of law, that SOI's damages were not limited to those incurred during the ninety day notice period in the cancellation clause; CNA appeals this ruling.

After a six-day trial, the jury found for SOI on its breach of contract claim, awarding over $10 million in damages and interest; the jury found for CNA on its claim for unpaid premiums, awarding

approximately $750,000 in damages and interest. We first address CNA's appeal, and then turn to SOI's cross-appeal.

## II.

### A.

CNA initially contends that the district court erred in denying its Rule 50(b) motion on the question of breach of contract. We review the district court's denial of a Rule 50(b) motion de novo. See Adkins v. Crown Auto, Inc., 488 F.3d 225, 231 (4th Cir. 2007).

The re-rating clause provides that CNA may re-evaluate the policy rate if, "in [CNA's] opinion," "additional exposures, premiums anticipated[,] and prior losses" all represent "significant changes from what has been contemplated herein." CNA argues that it did not breach the contract by refusing to renew SOI's policy at the $3.40 rate because the re-rating clause permitted CNA to raise the rate on SOI's policy. After deliberation, the jury returned a verdict for SOI on this claim.

CNA maintains that insufficient evidence supports this verdict. CNA contends that "exposures," as used in the re-rating clause, refers only to the amount of payroll insured under the policy as a matter of law, and that SOI's payroll indisputably increased significantly. CNA argues that the evidence indisputably shows that "premiums anticipated" and "prior losses" changed

6

significantly as well.  CNA thus contends that all three conditions in the re-rating clause were met, and that therefore it was entitled to re-evaluate the policy rate.

The district court correctly found that SOI offered evidence at trial from which the jury could conclude that CNA did breach the contract.  Specifically, SOI introduced evidence that "exposures" refers not just to the amount of payroll, as CNA asserted, but also to the risk associated with that payroll.  SOI also offered evidence that the risk associated with SOI's payroll did not increase.  On the basis of this evidence, the jury could conclude that "exposures" did not change significantly and that therefore CNA breached the contract when it attempted to raise the rate on SOI's policy.

B.

CNA also appeals the district court's grant of summary judgment to SOI on CNA's statute of limitations and modification defenses.  We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party -- with respect to this argument, CNA.  See Meson v. GATX Tech. Servs. Corp., 507 F.3d 803, 806 (4th Cir. 2007).

Under North Carolina law, a plaintiff must bring an action for breach of contract within three years of the date of the breach. N.C. Gen. Stat. § 1-52(1) (2007); see also Penley v. Penley, 332 S.E.2d 51, 62 (N.C. 1985).  SOI filed its complaint in this case on

7

December 27, 2002.  CNA argues that the statute of limitations bars SOI's suit because if CNA breached the contract, it did so no later than December 7, 1999, when it definitively told SOI that it planned to raise the rate on SOI's policy for the 2000 calendar year.  SOI contends that CNA did not breach the contract until its letter dated February 14, 2000, which advised that SOI's coverage had expired and that CNA would notify the appropriate state agencies accordingly.

North Carolina courts have recognized that a repudiation, or anticipatory breach, constitutes an actual breach of contract that triggers the statute of limitations <u>if</u> the injured party treats the repudiation as a breach.  <u>See</u> <u>Vreede v. Koch</u>, 380 S.E.2d 615, 617-18 (N.C. Ct. App. 1989); <u>Cook v. Lawson</u>, 164 S.E.2d 29, 32 (N.C. Ct. App. 1968).  The district court properly concluded that SOI did not treat CNA's December 7 letter as a breach, and so the statute of limitations did not begin to run until CNA's February 14 letter cancelling coverage.  SOI therefore timely filed suit.

CNA next argues that the Extension Agreement modified the original contract, and so CNA did not breach the contract because it abided by all of the terms of the Extension Agreement.  "A modification to a contract occurs if there is mutual assent to the terms of the modification and consideration for the contract." <u>Lewis v. Edwards</u>, 554 S.E.2d 17, 23 (N.C. Ct. App. 2001).  The district court properly found that the Extension Agreement did not

reflect a mutual agreement that SOI would waive its rights to sue under the original contract because, while the Agreement expressly includes a waiver of CNA's right to otherwise applicable penalties, it does not include a waiver of SOI's right to sue.

## C.

Finally, we turn to CNA's contention that the district court erred as a matter of law in refusing to limit SOI's damages to those incurred during the notice period following cancellation.

## 1.

The contract between CNA and SOI provides that all policies would be subject to a "90 day cancellation provision (except 10-day if for non-payment)." The policy itself provides that "[CNA] may cancel this policy. If [CNA] cancel[s] because [SOI] fail[s] to pay all premium when due, [CNA] will mail or deliver to [SOI] not less than 10 days advance written notice stating when the cancellation is to take effect. If [CNA] cancel[s] for any other reason, [CNA] will mail or deliver to [SOI] not less than 90 days advance written notice stating when the cancellation is to take effect."

Prior to trial, CNA argued that SOI's damages should be limited to those incurred within ninety days of the alleged breach of contract because the cancellation clause allowed either party to cancel with ninety days' notice. During trial, the district court ruled, as a matter of law, that SOI's damages were not limited by

the cancellation clause and so SOI could seek damages incurred during the full ten months that would have been covered by the original contract. CNA renewed this argument in its Rule 50(b) motion and the district court again rejected it. We review the district court's ruling on this question of law de novo. See Anderson v. Sara Lee Corp., 508 F.3d 181, 191 (4th Cir. 2007).[*]

Under North Carolina law, every contract includes "'an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.'" Governors Club, Inc. v. Governors Club Ltd. P'ship, 567 S.E.2d 781, 789 (N.C. Ct. App. 2002) (quoting Bicycle Transit Auth. v. Bell, 333 S.E.2d 299, 305 (N.C. 1985)). When a contract confers discretion on one of the parties that affects the rights of the other, that discretion "'must be

---

[*]SOI argues that CNA has waived its damages limitation "affirmative defense" because it failed to "plead the defense" in its answer. See Fed. R. Civ. P. 8. Even assuming that the limitation of damages is an affirmative defense subject to the pleading requirements of Rule 8, this issue is not waived. CNA first asserted that SOI's damages should be limited to those incurred during the ninety day notice period in its Statement of Disputed Issues for Trial and Trial Brief. The court heard argument on this question at the pretrial conference and SOI explicitly stated that it had "no objection to these issues" being resolved. The court invited further briefing and the parties submitted supplemental briefs on the first day of trial. The court then ruled from the bench that SOI's damages were not limited by the notice period in the cancellation clause. This issue was therefore tried by the parties' implied consent, and we treat it "in all respects as if raised in the pleadings." See People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 367 (4th Cir. 2001) (relying on Fed. R. Civ. P. 15(b)).

exercised in a reasonable manner based upon good faith and fair play.'" See Dysart v. Cummings, 640 S.E.2d 832, 836 (N.C. Ct. App. 2007) (quoting Mezzanotte v. Freeland, 200 S.E.2d 410, 414 (N.C. Ct. App. 1973)). SOI contends that the duty of good faith applies to CNA's exercise of discretion to cancel the contract. According to SOI, because CNA could not have cancelled without breaching the duty of good faith, SOI's damages should not be limited to those incurred during the notice period.

As an initial matter, it is not at all clear that the North Carolina courts would find that the duty of good faith and objective reasonableness applies to the cancellation provision at issue here. Certainly the duty of good faith limits the exercise of discretion when a contract grants a power to terminate only upon the occurrence or non-occurrence of a specific event or condition. See Dysart, 640 S.E.2d at 836; Mezzanotte, 200 S.E.2d at 414. But North Carolina courts have declined to decide whether a contract that requires notice of cancellation, but imposes "no additional restrictions upon the rights of either party to terminate the agreement," carries "an implied good faith limitation upon [the parties'] rights to terminate at will." Dull v. Mut. of Omaha Ins. Co., 354 S.E.2d 752, 757 (N.C. Ct. App. 1987). Here the cancellation provision does not require cause, nor does it make the parties' right to cancel depend on any contingency; it only requires ninety days' notice for either party to cancel. Therefore

11

the clause may not include any implied limitation on the parties' power to terminate their relationship.

We need not speculate as to how the North Carolina courts would resolve this open question, however, because even if the duty of good faith does apply here, CNA could invoke the clause without breaching this duty. Nothing in this record even suggests that CNA chose to terminate its relationship with SOI "with the intent to wrongfully deprive [SOI] of . . . benefits to which [it was] entitled or for any other wrongful or unconscionable purpose." Dull, 354 S.E.2d at 757; see also Claggett v. Wake Forest Univ., 486 S.E.2d 443, 447-48 (N.C. Ct. App. 1997) (declining to find breach of the duty of good faith and fair dealing when party's discretionary decision was "rational"). Unquestionably, CNA had lost a substantial amount of money under the contract with SOI and this loss constituted the reason that CNA wanted to terminate the contract if negotiation of a more profitable rate was impossible. Such a motive is neither wrongful nor unconscionable; indeed, North Carolina courts have specifically held that a party's desire to avoid financial losses constitutes reasonable grounds for declining to perform otherwise applicable contractual obligations. See, e.g., Jones v. Andy Griffith Prods., Inc., 241 S.E.2d 140 (N.C. Ct. App. 1978). Therefore, even if an implied duty of good faith limited the parties' exercise of their cancellation rights under

12

the contract, CNA could invoke the cancellation clause without breaching this duty.

Because CNA was entitled to terminate the contract under the cancellation clause, SOI's damages should have been limited to those incurred during the ninety-day notice period. See Bloch v. Paul Revere Life Ins. Co., 547 S.E.2d 51, 58-59 (N.C. Ct. App. 2001). As discussed above, CNA did not breach the contract until its letter cancelling coverage, dated February 14, 2000. SOI's damages are therefore limited to those incurred within ninety days after February 14, 2000.

2.

The district court held to the contrary for three reasons. We find none of them persuasive.

First, relying on Chevrolet Motor Co. v. Gladding, 42 F.2d 440 (4th Cir. 1930), the court found that the cancellation clause did not limit SOI's damages because CNA had not invoked that clause as its reason for terminating the agreement. SOI argues that the "mend the hold" doctrine also compels this result. The "mend the hold" doctrine is "an equitable doctrine that precludes the assertion of inconsistent litigation positions, usually concerning the meaning of a contract, within the context of a single lawsuit." Whitacre P'ship v. Biosignia, Inc., 591 S.E.2d 870, 886 (N.C. 2004). Gladding applied a similar rule, holding that "one who breaches his contract for reasons specified at the time will not be

13

permitted afterwards, when sued for damages, to set up other and different defenses." 42 F.2d at 445 (internal quotation marks and citations omitted). Unlike Gladding and cases applying the "mend the hold" doctrine, however, CNA's argument that damages should be limited to the notice period does not present an inconsistent position taken during, or in preparation for, litigation because the cancellation provision did not require specific cause. Therefore, both Gladding and the "mend the hold" doctrine are inapposite here.

Second, the district court held that the jury's conclusion -- that CNA's decision to raise the rate on SOI's policy was not objectively reasonable -- "necessarily foreclosed" a finding that CNA could invoke the cancellation clause without breaching the implied duty of good faith. As discussed above, the re-rating clause provides that CNA may re-evaluate the policy rate if "[1] additional exposures, [2] premiums anticipated[,] and [3] prior losses" all changed significantly, and SOI introduced evidence at trial that "exposures" had not changed. While all three of these conditions must be met in order to invoke the re-rating clause, the cancellation clause does not require that any of these conditions be met. The jury's conclusion that CNA did not have an objectively reasonable, good faith belief that all three specific conditions in the re-rating clause were met thus does not foreclose the holding that CNA had reasonable grounds to invoke the cancellation clause.

14

Therefore the jury's verdict with respect to the re-rating clause does not foreclose CNA's invocation of the cancellation clause.

Finally, the district court concluded that North Carolina cases limit damages to the notice period only in at-will employment contracts and other contracts of indefinite duration, and permit recovery of all damages incurred during the entire contract in contracts of fixed duration. But no North Carolina case so holds. Rather, North Carolina law merely holds that an injured party to a contract of fixed duration may recover damages incurred during the entire contract period when one party prematurely terminates the contract if it does <u>not</u> include a cancellation provision. <u>See</u> <u>Bloch</u>, 547 S.E.2d at 237-38 (citing <u>Lowery v. Love</u>, 378 S.E.2d 815 (N.C. Ct. App. 1989)). North Carolina courts have explained that this follows from the general rule that the non-breaching party's reasonable "expectation interest" defines the scope of recoverable damages. <u>See</u> <u>id.</u> (citing Restatement (Second) of Contracts § 344(a) cmt. a (1979)). Thus, when a contract <u>does</u> provide a right to cancel with notice the parties must reasonably expect that this right might be exercised, regardless of whether the contract is for a fixed term or of indefinite duration.

In sum, contrary to the conclusion of the district court, SOI's damages should have been limited to those incurred during the ninety-day notice period.

15

III.

A.

In its cross-appeal, SOI contends that the district court erred in denying its motion for a new trial or remittitur on CNA's claim for unpaid premiums. We review the district court's denial of a motion for a new trial or remittitur for abuse of discretion. See F.D.I.C. v. Bakkebo, 506 F.3d 286, 294 (4th Cir. 2007).

CNA based its counterclaim for unpaid premiums, in part, on a minimum payroll provision that allegedly applied to the 1999 policy year. SOI argues that it is entitled to a new trial because the weight of the evidence shows that the parties never actually agreed to the minimum payroll provision. The district court did not abuse its discretion in declining to disturb the jury's conclusion that SOI did in fact agree to this term. The district court also properly found that the minimum payroll provision only applied to the $3.40 rate program and that therefore any alleged miscalculation of premiums that SOI owed under other programs did not affect the jury's award.

B.

In addition to its breach of contract claim, SOI brought a claim under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 (2007) (UDTPA) and a common law "insurance bad faith" claim, for which it sought punitive damages. CNA moved for summary judgment on these claims, and the district

16

court granted the motion. We again review the district court's grant of summary judgment <u>de novo</u>, with respect to this argument viewing the facts in the light most favorable to SOI. <u>See</u> <u>Meson</u>, 507 F.3d at 806.

The North Carolina UDTPA makes unlawful unfair or deceptive acts affecting commerce. <u>See</u> N.C. Gen. Stat. § 75-1.1. A mere breach of contract does not constitute an unfair or deceptive act, but additional aggravating factors -- like fraudulent or deceptive conduct, or conduct that amounts to an inequitable assertion of power -- can trigger the Act. <u>See</u> <u>Mosley & Mosley Builders, Inc. v. Landin Ltd.</u>, 389 S.E.2d 576, 579-80 (N.C. Ct. App. 1990). North Carolina courts have held that a plaintiff may not recover punitive damages absent similar aggravating factors; punitive damages are appropriate only in "breach of contract actions that smack of tort because of the fraud and deceit involved." <u>Oestreicher v. Am. Nat. Stores, Inc.</u>, 225 S.E.2d 797, 809 (N.C. 1976). The district court correctly found, as a matter of law, that SOI's UDTPA and "insurance bad faith" claims fail because no reasonable jury could conclude that CNA's conduct included sufficient aggravating behavior.

IV.

To summarize, we hold that the district court should have limited SOI's damages to those incurred during the ninety day

17

notice period in the cancellation clause, and we reverse and remand with instructions for the district court to reduce the judgment accordingly.  Otherwise we affirm.  The judgment of the district court is therefore

<u>AFFIRMED IN PART,</u>
<u>REVERSED IN PART,</u>
<u>AND REMANDED</u>.

18